**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| COMMUNITY COUNTY DAY | ) | |
| SCHOOL, A Pennsylvania non-Profit | ) | |
| Corporation, *et al*., | ) | |
| | ) | Civil Action No. 14-19 Erie |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| THE SCHOOL DISTRICT OF | ) | |
| THE CITY OF ERIE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss

filed by Defendant the School District of the City of Erie (ECF No. 7) be granted.  It is further

recommended that the District Court:  (i) dismiss Count I of the Complaint with prejudice and

(ii) dismiss Count II of the Complaint without prejudice to be litigated in state court.

### II.  REPORT

#### A.  Relevant Background Facts

Plaintiff Community Country Day School ("CCDS") is a private school licensed by the

Pennsylvania Department of Education ("PDE") to educate students in grades 1 through 12.

(Complaint ¶7.)  CCDS is also an "Approved Private School" eligible to receive tuition

reimbursements from the PDE for the purpose of providing special education services to students

who are "seriously emotionally disturbed" within the meaning of the Individuals with

Disabilities Education Act, 20 U.S.C. §1400 *et seq.*  (Id. at ¶¶ 10, 39-40.)  CCDS provides a

unique academic program featuring small class sizes which help reinforce positive behavior expectations and promote modeling of positive behavior by other students. (Id. at ¶8.)

In addition to being an "Approved Private School," CCDS is certified by the Department of Public Welfare to maintain a Children and Youth Partial Hospitalization medical services program ("Partial Hospitalization Program") pursuant to 55 Pa. Code §5210.35 *et seq.* (Compl. ¶ 11.) The medical services which CCDS provides through its Partial Hospitalization Program are federally subsidized Medicaid benefits pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§1396 *et seq.*, popularly known as the "Medicaid Act." (Id. at ¶¶ 12-13.) Pursuant to law, the students in CCDS's Partial Hospitalization Program receive a minimum of three hours of planned treatment programs per hospitalization day, in which a therapeutic milieu is emphasized. (Id. at ¶15; *see also* 55 Pa. Code §5210.39.) These treatment programs emphasize a therapeutic milieu and include: (a) therapeutic, recreational, social and vocational activities, (b) individual and group psychotherapy, (c) psychiatric, psychological, and social evaluations, and (d) medical evaluations and other activities. (Id.) Treatments and activities are incorporated into school classes through various methods, including the use of mental health specialists in CCDS's classrooms, such that students in the PHP are educated alongside their peers who are not in the PHP. (Compl. at ¶16.)

CCDS has filed this lawsuit in its representational capacity vis-à-vis its students residing within the City of Erie who were enrolled by their parents and/or guardians for the purpose of receiving both educational services and partial hospitalization services at CCDS. (Compl. ¶¶ 2, 14.) Also named as Plaintiffs are Fananda Clinton and Juanita Correa, parents and natural guardians of students who similarly: (a) reside within the City of Erie, (b) are enrolled in CCDS's academic programs and (c) participate in CCDS's Partial Hospitalization Program. (Id.

at ¶¶ 3, 14.)  Each of these subject students (collectively referred to as the "Students") was found

to be in need of partial hospitalization services by a team which included a psychiatrist.  (Id. at

¶14.)  In addition, each of the Students is Medicaid-eligible, meaning that Medicaid funds pay

for the medical services rendered to them through CCDS' Partial Hospitalization Program. (Id. at

¶18.)

As parents and/or guardians of Medicaid recipients, the parents/guardians of the Students

have the right under federal and state law to choose the provider of medical services for their

children.  *See* 42 U.S.C. §1396a(a)(23)(A); 62 Pa. Stat. §1405(a).  This includes the right to

choose CCDS as their provider of partial hospitalization medical services.  (Compl. ¶¶ 19-20; 42

U.S.C. §1396a(a)(23)(A); 62 Pa. Stat. §1405(a).)  Because the medical services and related

therapies which CCDS provides through its Partial Hospitalization Program are integrated into

the school's unique academic program throughout the school day, Plaintiffs assert that it would

be impracticable to provide medical treatment in the Partial Hospitalization Program for the

Students and yet remove them from CCDS's academic program in order to have them educated

at another facility.  (Compl. ¶ 17.)

Plaintiffs contend that, by law, the education of the Students must be provided by

Defendant, the School District of the City of Erie (the "School District"), as the agent for the

PDE.  (Compl. ¶25 (citing 55 Pa. Code §5210.37).)  Since the 2008-2009 school year, however,

the School District has provided no subsidy, or only a partial subsidy, for the education of

students living within the Erie School District who were enrolled each year at CCDS and

receiving medical services through CCDS's Partial Hospitalization Program.  (Compl. ¶¶ 30-38.)

Since the 2008-2009 school year, CCDS has repeatedly requested that the School District pay for

the education of Erie School District students at a "reasonable rate" while those students were

attending CCDS's Partial Hospitalization Program. (Id. at ¶ 43.) The School District has refused to make the requested payments on the basis that it did not refer or place any of the subject students in CCDS's Partial Hospitalization Program. (Id. at ¶ 44.)

According to Plaintiffs, the School District maintains that it has the right to require any Erie students who require partial hospitalization services to receive those services exclusively from Sarah A. Reed Children's Center of Erie Pennsylvania ("Sarah Reed"). (Compl. ¶ 45.) Appended to their complaint is an agreement pursuant to which the School District agreed to compensate Sarah Reed, during the 2011-2012 school year, for the costs of "all special education and regular education services for each student attending the educational portion of [Sarah Reed's Partial Hospitalization] Program." (Compl. ¶50; Compl. Ex. A §§ 2.b and 2.c.i.)

Plaintiffs claim that, by refusing CCDS's requests for payment, the School District essentially required the parents of the subject students to waive their rights under federal and state law to choose CCDS as the provider of partial hospitalization services for their children as a condition to receiving an education paid for by the School District. (Compl. ¶ 46.) Plaintiffs further claim that the School District's refusal to pay for the education of CCDS's students is contrary to federal and state law because it is the parents and guardians of students enrolled in CCDS's PHP program who have the right to choose CCDS as their PHP provider, and it is impracticable for CCDS to separate its Partial Hospitalization Program from its educational program. (Compl. ¶ 47.)

Some of the subject students attending CCDS's Partial Hospitalization Program are "seriously emotionally disturbed" within the meaning of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq.*, and are therefore entitled to receive special education services under Part B of IDEA, *id.* at §§1401 *et seq.* (Compl. ¶39.) As a PDE-

approved private school, CCDS is qualified to provide special education services to seriously emotionally disturbed students while they are in CCDS' Partial Hospitalization Program. (Id. at ¶ 40.) In order for these students to receive reimbursable special education services, however, the School District, as the students' local educational agency, must first approve and process an application for these services. (Id. at ¶ 41.) CCDS alleges that, despite its repeated requests that the School District process and approve applications for special education services for its seriously emotionally disturbed students, the School District has refused to do so. (Id. at ¶ 42.) As a result, Plaintiffs alleged, those seriously emotionally disturbed students at CCDS who are entitled to special education services under IDEA are unlawfully being deprived of those services. (Id. at ¶51.)

B. Procedural History

Plaintiffs filed their two-count complaint (ECF No. 1) against the School District on January 23, 2014. Count I of the complaint asserts a claim under 42 U.S.C. §1983 premised upon the School District's violation of two distinct federal statutory rights, namely: (i) the right of the Students' parents and guardians to choose CCDS as the provider of partial hospitalization medical services for their children under the Medicaid Act's freedom-of-choice provision, 42 U.S.C. §1396a(a)(23)(a); and (ii) the right of seriously emotionally disturbed students at CCDS to receive special education services pursuant to the IDEA. (Compl. ¶¶53-57.) Count II of the complaint alleges that the School District violated the Plaintiff parents' corresponding right under Pennsylvania law to choose CCDS as its provider of partial hospitalization services. (Compl. at ¶¶ 59-63.) As relief, Plaintiffs seek a judgment that, among other things: (i) requires the School District to pay for the educational services that the Students have received or will receive at CCDS while in the School's Partial Hospitalization Program, beginning with academic

years 2008-2009 through 2012-2013 and continuing thereafter; and (ii) requires the School

District to promptly process and approve applications to qualify seriously emotionally disturbed

students to receive special education services at CCDS. (Compl. pp. 15-16.)

On February 14, 2014, the School District filed the pending motion to dismiss the

complaint (ECF No. 7) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In

support of its motion, the School District argues that Count I fails as a matter of law because

Plaintiffs have not alleged the violation of any right guaranteed by the Constitution or laws of the

United States that is enforceable under §1983. The School District urges the dismissal of Count

II on the grounds that the Pennsylvania statute invoked by the Plaintiffs neither supports the right

they assert nor confers upon them a private right of action. (Def.'s Br. in Supp. of Mot. to

Dismiss Compl. [ECF No. 8] at 7-20.) Plaintiffs filed their brief in opposition to the pending

motion (ECF No. 14) on March 17, 2014. The School District filed its reply (ECF No. 19) on

April 1, 2014. Consequently, the issues have been adequately joined and the motion is ripe for

disposition.[1]

C. Standard of Review

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiency of the

complaint. When reviewing a motion to dismiss, the district court must accept all well-pleaded

facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff.

*Burtch v. Milberg Factors, Inc.*, 62 F.3d 212, 220 (3d Cir. 2011) (*citing In re Ins. Brokerage*

*Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir.2010)). However, as the Supreme Court of the United

States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough

to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also*

---

[1] This Court has subject matter jurisdiction over the instant civil action pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367(a).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (*quoting Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit instructs that a district court must take a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n. 7 (3d Cir.2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (*citing Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (*quoting Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (*quoting Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (*quoting Iqbal*, 556 U.S. at 679).

Courts may generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a

court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

D. Discussion and Analysis

   1. *Count I of the Complaint*

Plaintiffs' first cause of action is brought pursuant to 42 U.S.C. §1983, which provides a private right of action as against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...

42 U.S.C. §1983. This statute does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).

To state a viable claim under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Lomax v. U.S. Senate Armed Forces Service Committee,* 454 F. App'x 93, 95 (3d Cir. 2011) (*quoting West v. Atkins*, 487 U.S. 42, 48 (1988)). In this case, the School District moves to dismiss Plaintiffs' §1983 claim on the ground that no violation of a federal right has been alleged. Although, for reasons addressed in more detail below, the School District's argument has merit, there is another dispositive flaw with respect to Plaintiffs' first cause of action: specifically, Plaintiffs lack standing to assert a §1983 claim premised on the alleged violation of rights afforded under 42 U.S.C. §1396a(a)(23).

a. <u>Plaintiffs' Lack of Standing</u>[2]

It is axiomatic that federal courts have limited jurisdiction pursuant to Article III of the U.S. Constitution and may consider only actual "cases or controversies." *New Jersey Peace Action v. Obama*, 379 F. App'x 217, 221 (3d Cir. 2010) (*citing Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990)). "The 'core' of the 'case-or-controversy requirement' is the 'triad of injury in fact, causation, and redressability.'" *Id.* (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)). To satisfy the "injury-in-fact" requirement, a plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted)). To satisfy the "causation" requirement, a plaintiff must demonstrate "a causal connection between the injury and the conduct complained of." *Id.* (*quoting Lujan*, 504 U.S. at 560). To satisfy the

---

[2] Because a lack of subject matter jurisdiction concerns the court's very authority to hear the case before it, jurisdictional deficiencies must be considered and addressed at the outset. *See B&P Holdings I, LLC. v. Grand Sasso, Inc.,* 114 F. App'x 461, 465 (3d Cir. 2004) (noting that "it is typically *de rigueur* for a court to address jurisdictional issues at the outset"); *Lepre v. Lukas,* Case No. 3:13–CV–796, 2014 WL 198811 *16 (M.D. Pa. Jan. 15, 2014)("When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.") (citation omitted). Importantly, federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006). *See also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Court's standard of review depends on whether the jurisdictional challenge is a facial one or a factual one. *See CNA v. United States,* 535 F.3d 132, 139 (3d Cir. 2008) (where a district court analyzes a motion under Rule 12(b)(1), "its first task is to classify the [defendant's] motion as either a factual attack or a facial attack"). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (alterations in the original) (*citing U.S. ex rel. Atkinson v. Pa. Shipbuilding Co*., 473 F.3d 506, 514 (3d Cir. 2007)).

Because the jurisdictional problem in this case involves a facial deficiency in the complaint, the Court need only consider the allegations of the complaint and documents referenced therein and attached thereto, and these must be viewed in the light most favorable to the Plaintiffs. *See Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 347 (3d Cir. 2012) (citation omitted). In addition, the Court may consider matters of public record. *See Medici v. Pocono Mountain Sch. Dist*., Civ. A. No. 09–cv–2344, 2010 WL 1006917 at *2 (M.D. Pa. Mar.16, 2010) (citation omitted); *Jones v. Butler,* Civ. A. No. 09–3128, 2009 WL 2461885, at *1 and n. 12 (E.D. Pa. Aug. 11, 2009) (citing authority). Although the Court must construe the facts alleged in the Plaintiffs' favor, it need not accept bald assertions or legal conclusions as true. *Batchelor v. Rose Tree Media School Dist*., Civil Action No. 11–6733, 2013 WL 1776076 at *3 (E.D. Pa. Mar. 28, 2013) (citing authority).

redressability requirement, a plaintiff must demonstrate that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. (*quoting Lujan*, 504 U.S. at 561 (internal quotation marks omitted)). If the plaintiff cannot satisfy these requirements, then the case must be dismissed for lack of subject matter jurisdiction, even if the case involves a claim for declaratory relief. *Id*. (*citing Steel Co*., 523 U.S. at 88–89 and *St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir.2000) ("A declaratory judgment ... can issue only when the constitutional standing requirements of a 'case' or 'controversy' are met.")). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Here, no case or controversy exists relative to the claims of the Plaintiff parents and students because the complaint does not allege any facts that would establish injury-in-fact, causation, or redressability relative to the right in question. No injury-in-fact has been alleged because the complaint makes clear that the parents and their children have successfully exercised their right to choose CCDS as their preferred provider of the partial hospitalization medical services their children are receiving. (*See, e.g*., Compl. ¶¶ 2-3, 14 (indicating that the Students in this lawsuit have been enrolled in both CCDS's Partial Hospitalization program and its academic program); *id*. at ¶¶ 15-17 (describing the medical and educational services which the Students are receiving at CCDS); *id*. at ¶ 54(alleging that the School District "*attempted* to deprive" the Students' parents "of the right to choose CCDS as the provider of partial hospitalization medical services for the Students")(emphasis added).)

Although the complaint avers that the School District should be subsidizing the tuition costs for the Students, no allegation is made that any of the Students have been turned away from, or have chosen to leave, CCDS's Partial Hospitalization Program because of the School

District's failure to pay their tuition. Nor is it alleged that any of the Students' parents are burdened by the School District's refusal to pay tuition costs to the extent that they are imminently planning (or even considering) withdrawing their children from CCDS's Partial Hospitalization Program. On the contrary, the complaint makes clear that CCDS is itself underwriting the tuition costs of the students in its Partial Hospitalization Program, and any financial burden resulting from the School District's policy has therefore been borne directly and exclusively by CCDS.[3] (*See* Compl. ¶ 48 ("As a result of the Erie School District's refusal to pay for the education of the Students and Represented Students enrolled in CCDS' Partial Hospitalization Program, CCSDS has borne the cost of educating these Students in CCDS' unique academic program, causing financial hardship for CCDS, and causing funds to be used for the education of these Students and Represented Students which should have been used for maintenance and upkeep of CCDS' facilities and for additional programs for all school children and youths at CCDS and for the payment and retention of faculty at CCDS."); *id.* at ¶ 55 ("But for the School District's [alleged misconduct], CCDS would not have had to bear the cost of educating the Students and Represented Students in the CCDS unique academic program and suffer the resulting hardship that contributed to CCDs' need to seek Chapter 11 bankruptcy protection.").)

That CCDS has borne the financial burden of the alleged statutory violation is evident from the Plaintiffs' prayer for relief, which seeks only tuition money for the benefit of CCDS. (*See* Compl. at pp. 15-16.) Thus, insofar as the individual Plaintiffs' right to choose CCDS as the provider of partial hospitalization services is concerned, the complaint fails to establish any

---

[3] In its brief in support of the motion to dismiss, the School District asserts that CCDS charges a minimal amount of tuition from its families. To the extent this Court must accept the School District's representation as true, the outcome of this Court's analysis is unchanged. There is simply no allegation in the complaint that the amount of tuition, if any, paid by the Plaintiff parents is affecting their right to choose CCDS as the provider of partial hospitalization services for their children.

injury to that right which is "concrete and particularized" and also "actual or imminent," as opposed to merely conjectural or hypothetical.[4]

Because no injury-in-fact has been pled relative to the Plaintiff parents or the Students, it necessarily follows that no causal connection has been pled as between the injury and the School District's conduct. In addition, no facts have been pled that could establish redressability for the Plaintiff parents or their children. Here, there is no likelihood that the alleged injury will be redressed by a favorable decision because, again, neither the Plaintiff parents nor the Students have suffered any injury-in-fact relative to their right to choose CCDS as their preferred provider of partial hospitalization services.

In addition, the complaint makes clear that the relief requested – tuition reimbursements – will directly benefit CCDS. Although this additional income stream may potentially provide an indirect academic benefit to the subject students (in the form of, e.g., more staffing, capital improvements to the school, smaller class sizes, or more robust academic programs), such relief will do nothing to further the Plaintiffs' right to select CCDS as the provider of partial hospitalization services because that choice has already been successfully exercised.

---

[4] The complaint does assert that the School District's alleged misconduct has caused CCDS to bear the cost of educating the Students and thereby "suffer the resulting hardship that contributed to CCDS' need to seek Chapter 11 bankruptcy protection." (Compl. ¶ 55.) Although this allegation, if proved, might support a finding that CCDS has suffered an injury-in-fact, it is not sufficient to establish that the Students or their parents have suffered an injury-in-fact that is "concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990). The complaint makes no allegation as to whether CCDS is likely to continue doing business as a result of its Chapter 11 proceedings or whether, alternatively, it is likely to cease operations at some future point, thereby depriving the Students of their ability to continue in CCDS' Partial Hospitalization Program. While it is certainly possible that the Students may at some point lose the benefit of CCDS's partial hospitalization services in light of CCDS's Chapter 11 status, "[a]llegations of 'possible future injury' are not sufficient to satisfy Article III." *Reilly v. Ceridian Corp.,* 664 F.3d 38, 42 (3d Cir. 2011) (*quoting Whitmore,* 495 U.S. at 158 and *citing Lujan v. Defenders of Wildlife,* 504 U.S. at 564 n. 2). Rather, "[a] threatened injury must be 'certainly impending,'" *id.* (*quoting Whitmore,* 495 U.S. at 158), and must "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all," *id.* (*quoting* Lujan, 504 U.S. at 564 n. 2 and *citing Whitmore, supra,* at 155). "A plaintiff therefore lacks standing if his 'injury' stems from an indefinite risk of future harms inflicted by unknown third parties." *Id.* (*citing Lujan,* 504 U.S. at 564). In this case, the complaint contains no allegation plausibly establishing a harm to the Students and their parents that is "actual or imminent" as opposed to "conjectural or hypothetical." *Reilly,* 664 F.3d at 42 (quoting *Whitmore,* 495 U.S. at 155) (internal quotation marks omitted). *See also Lujan,* 504 U.S. at 564 n.2 (allegations of a future harm at some indefinite time cannot be an "actual or imminent injury").

Consequently, the complaint fails to allege any "case or controversy" relative to the Plaintiff parents and the Students, and these individuals therefore lack standing to assert a §1983 claim premised upon the alleged violation of their rights under 42 U.S.C. §1396a(a)(23).

CCDS is also named as a Plaintiff in this lawsuit, and it purports to have standing in its "representative capacity" with respect to the Students. (Compl. ¶ 2.) An organization may have "representational standing" where: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *New Jersey Peace Action v. Obama,* 379 F. App'x at 219 n. 1 (*quoting Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). For the reasons discussed, CCDS's "members" (assuming the represented students and/or their parents can be considered such) do not have standing to sue in their own right. Accordingly, CCDS cannot satisfy the first element necessary to establish a basis for representational standing.

In its brief in opposition to the pending motion, CCDS also invokes the doctrine of third-party standing. The doctrine of third-party standing permits a plaintiff to bring suit on behalf of a third party for injury done to the third party in certain circumstances when the third party cannot effectively protect its own interests. *See Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). More specifically, third-party standing applies where (1) the plaintiff has also suffered an injury from the defendant's alleged misconduct; (2) the plaintiff and the third party have a "close relationship"; and (3) the third party faces some obstacles that prevent it from pursuing his own claims. *See In re Majestic Star Casino, LLC,* 716 F.3d 736, 749 (3d Cir. 2013) (*quoting Pa. Psychiatric Soc'y v. Green Spring Health Servs. Inc*., 280 F.3d 278, 288-89 (3d Cir.2002)). Implicit in this doctrine, however, is the fundamental assumption that the third party personally

suffered an injury-in-fact which would give rise to a claim but for obstacles which prevent the third party from personally asserting that claim. *See, e.g., Powers v. Ohio,* 499 U.S. 400, 111 S. Ct. 1372-73 (1991) (holding that a litigant has third party standing to assert the rights of a juror who is unconstitutionally excluded from a venire); *Singleton v. Wulff,* 428 U.S. 106, 115-18 (1976) (doctors had standing to raise claims that a statute restricting abortion funding violated the constitutional rights of their patients); *Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.,* 280 F.3d 278, 289-90 (3d Cir. 2002) (psychiatrists had third party standing to bring an ERISA action against managed care organizations for their allegedly improper refusal to authorize necessary treatments for the psychiatrists' patients).

Here, the claim which CCDS is purportedly asserting on behalf of the subject students and their parents is a claim for tuition money. This is a claim which potentially implicates the Students' and Plaintiff parents' rights under state law, but it does not implicate any right they may hold under federal law or under §1396a(a)(23) in particular. Stated differently, CCDS is not purporting to prosecute, on behalf of third-party parents and students, a claim that would permit the Plaintiff parents and Students to choose CCDS as their provider of partial hospitalization services because that choice has already been fully exercised by the third parties. (See Compl. ¶2 (specifically designating the represented Plaintiffs as students who live within the City of Erie and who are currently receiving both academic instruction and partial hospitalization services as CCDS).) Thus, CCDS has not alleged a basis for asserting third-party standing relative to any federal claim.

Finally, CCDS cannot assert a §1983 claim premised upon the alleged violation of 42 U.S.C. §1396a(a)(23) in its own right because, as the School District points out, CCDS is not an intended beneficiary of Medicaid's "freedom-of-choice" provision. Federal courts "adhere[ ] to

a set of prudential principles that bear on the question of standing." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982). Consistent with these principles, the United States Supreme Court has held that a "plaintiff's complaint [must] fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantees in question.'" *Id.* at 475 (quoting *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153 (1970)). Several federal courts have observed that medical providers are not within the "zone of interests" intended to be protected by the subject freedom-of-choice provision. *See Catanzano v. Wing,* 992 F. Supp. 593, 595 (W.D.N.Y. 1998) (opining that "the legislative history of [§1396a(a)(23)], like that of the Medicaid statutes in general, indicates that it is intended to confer rights upon health care recipients, not providers."); *RX Pharmacies Plus, Inc. v. Weil*, 883 F. Supp. 549, 553–54 (D. Colo. 1995) (holding that pharmacy plaintiffs lacked standing to challenge Colorado's actions based on §1396a(a)(23) because "the freedom of choice provisions … were intended to protect Medicaid recipients, and do not confer any enforceable rights on Medicaid providers"). *See also Silver v. Baggiano,* 804 F.2d 1211, 1216-17 (11th Cir.1986) (observing in dicta that, "[a]s with the Medicaid statute as a whole, § 1396a(a)(23) was intended to benefit Medicaid recipients," and "there is no indication in the language that health care practitioners are given any rights by this provision" )(footnote omitted). Plaintiffs do not appear to be contesting this point of law and, in any event, they have not cited any case law suggesting that providers have enforceable rights under the Medicaid Act's freedom-of-choice provision. For all of these reasons, CCDS lacks standing to assert a §1983 claim premised upon the alleged violation of 42 U.S.C. §1396a(a)(23).

b.  Plaintiffs' Failure to State a Cognizable Claim

Even if standing were not a problem for the Plaintiffs, their §1983 claim premised upon

the alleged violation of 42 U.S.C. §1396a(a)(23) would still be deficient because it does not state

a cognizable cause of action.  Federal law is clear that, for purposes of seeking redress under

§1983, a plaintiff must allege the violation of a federal *right*, not merely a violation of federal

law.  *See Grammer v. John J. Kane Regional Centers,* 570 F.3d 520, 525 (3d Cir. 2009) (*citing*

*Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Golden State Transit Corp. v. Los Angeles*, 493

U.S. 103, 106 (1989)).  The plaintiff bears the burden of establishing that the statute in question

gives rise to federal rights enforceable through § 1983.  *Grammer,* 570 F.3d at 525-26 (*citing*

*Blessing*, 520 U.S.at 342, 346; *City of Rancho Palos Verdes, California v. Abrams*, 544 U.S. 113,

120 (2005)).

In order to ascertain whether a particular federal statute creates a federal right of the kind

enforceable by an action for damages under § 1983, the Court must determine "whether or not

Congress intended to confer individual rights upon a class of beneficiaries." *Grammer,* 570 F.3d

at 525 (*quoting Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)).  In *Blessing v. Freestone*, the

Supreme Court delineated three factors relevant to this determination, which have been

summarized as follows:  "(1) the statutory provision must benefit the plaintiffs with a right

unambiguously conferred by Congress; (2) the right cannot be so "vague and amorphous" that its

enforcement would strain judicial competence; and (3) the statute must impose a binding

obligation on the States."  *Lewis v. Alexander,* 685 F.3d 325, 344 (3d Cir. 2012) (*citing Blessing*

520 U.S. at 340-41; *Gonzaga Univ.,*  536 U.S. at  282.  Establishing these three requirements

creates a rebuttable presumption that the plaintiff has the right in question; however, this

presumption can be rebutted by a showing that Congress "specifically foreclosed a remedy under

§ 1983." *Grammer,* 570 F.3d at 525-26 (*citing Gonzaga Univ.*, 536 U.S. at 285). *See also Ass'n of N.J. Rifle & Pistol Clubs v. Port Authority of NY & NJ,* 730 F.3d 252, 254 (3d Cir. 2013).

(i)

The Plaintiffs' §1983 claim in this case is primarily based upon the alleged violation of their rights under the Medicaid Act's "freedom of choice" provision, codified at 42 U.S.C. §1396a(a)(23). In pertinent part, this statute requires state Medicaid plans to "provide that … any individual eligible for medical assistance … may obtain such assistance from any institution … qualified to perform the service or services required … who undertakes to provide him such services." §1396a(a)(23)(A). Plaintiffs allege that this statute confers upon the parents of Medicaid-eligible CCDS students the right to choose CCDS as the provider of partial hospitalization medical services for their children. Plaintiffs further contend that this right has been violated by virtue of the School District's refusal to pay the tuition costs of CCDS students who receive medical services through the School's Partial Hospitalization Program.

The School District does not dispute that the parents of CCDS's Medicaid-eligible students have a right to choose CCDS as the provider of medical services for their children through its Partial Hospitalization Program. Moreover, the School District does not dispute that §1983 is a proper mechanism for the enforcement of that right. Instead, the School District takes issue with the manner in which Plaintiffs have characterized the "right" in question. It argues that, in reality, the Plaintiffs are asserting a right that goes well beyond the provisions of 42 U.S.C. §1396a(a)(23) and is actually nonexistent – namely, the "right" to have their private-school tuition paid for by the School District.

This argument is well-taken. The Supreme Court has made clear that nothing short of an "unambiguously conferred right" can support a cause of action brought pursuant to §1983.

*Gonzaga Univ.*, 536 U.S. at 282-83 ; *Blessing,* 520 U.S. at 329; *Lewis,* 685 F.3d at 344. The allegations in the complaint fail to allege a plausible violation of any "unambiguously conferred" federal right. Notwithstanding the Plaintiffs' invocation of §1396a(a)(23), the essence of their §1983 claim, as evidenced by their prayer for relief, is that the School District should be required to pay for the Students' private school tuition at CCDS. Nothing in the language of §1396a requires this, as the statute speaks only in terms of medical assistance and medical services, not education. Thus, as the School District points out, Plaintiffs' §1983 claim fails based upon the plain language of §1396a(a)(23)(A).

Plaintiffs' argument as to why their freedom of choice has been infringed derives from their allegation that medical services and educational programs are inseparably integrated at CCDS. According to Plaintiffs, "the need to intertwine the requirements of a minimum of three hours of partial hospitalization services for various students within the school day makes it impracticable to move students within the CCDS's partial hospitalization program from CCDS to have them educated in another school." (Pl.s' Br. Opp. to Def.'s Mot. Dismiss [ECF No. 14] at 15-16 (citing Compl. ¶¶ 15-17).) Thus, Plaintiffs conclude, "the School District's refusal to pay for the education of CCDS students in its Partial [Hospitalization] Program … deprives the parents of students in the Program of their freedom-of-choice of medical services under 42 U.S.C. §1396a(a)(23)(A)." (Id. at 16.) In other words, it is the Plaintiffs' position that the Students in CCDS' Partial Hospitalization Program must receive their education onsite at CCDS and at no other location.

As the School District observes, it is not alleged to have played any role in CCDS's integrated arrangement of academic and medical services,[5] nor is it alleged to have placed any of

---

[5] In fact, the School District argues that such bundling of academic and medical services violates joint policy guidelines issued by the DPW and the PDE. (*See* Def.'s Reply Br. [ECF No. 19] at 7-9.)

the Students at CCDS or referred any of them to CCDS' Partial Hospitalization Program. (*See* Compl. ¶ 44 .) The fact that CCDS has chosen to administer its academic and partial hospitalization programs in an integrated fashion does not thereby convert the academic component into a federally guaranteed right, even if an onsite education for the Students facilitates their ability to utilize CCDS's Partial Hospitalization Program. *See Harris v. James,* 127 F.3d 993, 1011-12 (11th Cir. 1997) (a federal regulation, pursuant to which state Medicaid plans must "ensure necessary transportation for [Medicaid] recipients to and from providers," did not create a federal right to transportation under §1983, even though the regulation could be said to "further the broad objectives" of rights afforded under 42 U.S.C. §1396a(a)(23)(A)).

Plaintiffs nevertheless offer several theories as to why the School District's failure to pay tuition costs to CCDS amounts to a violation of §1396a(a)(23). Each of these theories lacks merit.

First, Plaintiffs cite *Harris v. Olszewski,* 442 F.3d 456 (6th Cir. 2006), for the proposition that a "single-source contract" violates the Medicaid Act's freedom of choice provision. In *Harris,* the Sixth Circuit Court of Appeals considered the legality of an agreement between Michigan's Department of Community Health and an entity known as J&B Medical pursuant to which J&B Medical was designated as the single-source provider of incontinence products to all of Michigan's Medicaid recipients. The plaintiffs in *Harris* were Medicaid recipients who, having a need for incontinence products, claimed that the agency's contract violated the Medicaid Act's freedom-of-choice provision. The district court agreed with the plaintiffs and entered summary judgment in their favor but, on appeal, the Sixth Circuit reversed on grounds not germane to the case at bar.

Initially (and relevantly for our purposes), the court of appeals in *Harris* held, in agreement with the district court, that §1396a(a)(23)(A) creates enforceable rights which Medicaid recipients may vindicate through a §1983 lawsuit. *See* 442 F.3d at 461. In expounding on this point of law, the court of appeals stated that the freedom-of-choice provision "'gives recipients the right to choose among a range of qualified providers[ ] without government interference.'" *Id.* at 462 (quoting *O'Bannon v. Town Court Nursing Ctr.,* 447 U.S. 773, 785 (1980)) (alteration in the original). Ultimately, however, the appellate court held that the products in question unambiguously fell within a statutory exception to the freedom-of-choice provision applicable to "medical devices." *See* 442 F.3d at 468-69 (discussing and applying 42 U.S.C. §1396n(a)(1)(B)).

From the foregoing, Plaintiffs in this case extrapolate the legal proposition that a single source contract violates §1396a(a)(23). From there, they segue to an agreement between the School District and Sarah Reed relative to the 2011-2012 school year pursuant to which the School District agreed to subsidize the tuition costs of certain students attending Sarah Reed's partial hospitalization services. (Compl. Ex. A.) Based on this contract, Plaintiffs posit that "the School District pays for the educational services of students who receive partial hospitalization services at Sarah Reed but refuses to pay for the same services at CCDS." (Pls.' Br. in Opp. at 13.) According to Plaintiffs, "[t]his is precisely the type of single source provider system prohibited by the Sixth Circuit in *Harris."* (Id.)

Plaintiffs' argument is unpersuasive. First, contrary to Plaintiffs' representations, the Sixth Circuit's opinion in *Harris* does not state that a single-source contract necessarily violates the Medicaid Act's freedom-of-choice provision. (*See* Pls.' Br. in Opp. at 12 (citing *Harris, supra,* at 461).) In point of fact, the *Harris* court did not opine on whether the agreement at issue

restricted the plaintiffs' freedom of choice because the government defendants did not dispute that point.[6]  Second, even if *Harris* can be read for the proposition for which it is offered, that still does not help the Plaintiffs' cause in the instant matter because *Harris* is materially distinguishable in a critical respect.  Here, unlike in *Harris,* the alleged "single-source contract" concerns the provision of *educational* services, not medical services or products.  The District's alleged policy of limiting *tuition* reimbursements to a particular provider of partial hospitalization medical services, even if proved, is simply not analogous to the type of single-source contract for medical devices which the plaintiffs in *Harris* were challenging.  Third, Plaintiffs' assertion that the School District has entered into a "single source contract" is not a factual averment which must be credited as true for purposes of a Rule 12(b)(6) analysis; rather, it is a legal conclusion which is not supported by the underlying source document upon which Plaintiffs rely.

The contractual agreement in question pertains only to one school year, and it contains no language indicating that Sarah Reed is the exclusive partial hospitalization site for which tuition reimbursements will be made.[7]  Further, the agreement makes clear that not every student receiving partial hospitalization services at Sarah Reed will be educated there.  (*See* Compl. Ex. A [ECF No. 1] at 17-18 (stating that the parties must work collaboratively "to evaluate each

---

[6] In analyzing whether §1396a(a)(23) creates private rights that are enforceable under §1983, the court of appeals considered, among other things, whether "the right assertedly protected by the statute" is "so vague and amorphous that its enforcement would strain judicial competence."  442 F.3d at 461 (*citing Blessing*, 520 U.S. at 340–41 (internal quotation marks omitted)).  The court of appeals concluded that, "while there may be legitimate debates about the medical care covered by or exempted from the freedom-of-choice provision, the mandate itself does not contain the kind of vagueness that would push the limits of judicial enforcement."  442 F.3d at 462.  The court reasoned that "[w]hether a state plan provides an individual with the choice specified in the provision is likely to be readily apparent," *id.*, and it observed that the parties in *Harris* did not dispute that the state agency's single-source contract failed to provide freedom of choice.

[7] At most, the agreement shows that, for purposes of the 2011-2012 school year, the parties contemplated that there might be individual cases in which the School District would subsidize the educational costs of students who attend Sarah Reed for partial hospitalization services.  However, this arrangement does not equate to the School District purporting to require that Erie students receive their partial hospitalization medical services Sarah Reed exclusively.

student's individual circumstances to determine whether the student should receive educational services at the District during the day or whether it is in the student's best interests to receive educational services at [Sarah Reed] or, possibly a combination thereof"); *id.* (stating that the purpose of the agreement is to clarify the rights and obligations of the parties "*in those situations where the District contracts with SRCC to provide educational services to a student attending [Sarah Reed's Partial Hospitalization] Program*") (emphasis added).)[8] Because Plaintiffs' characterization of the agreement as a "single-source contract" does not comport with the language of the agreement itself, Plaintiffs' averments regarding the District's "single-source contract" with Sarah Reed are nothing more than an unsupported legal conclusion which may be disregarded by this Court pursuant to its Rule 12(b)(6) analysis.

Plaintiffs next theorize that the School District's violation of §1396a(a)(23)(A) stems from its alleged violation of state administrative law which requires the School District, as a local educational agency, to provide education to students receiving partial hospitalization services. The relevant state regulation is 55 Pa. Code §5210.37, which provides that:

> [b]asic education and, in particular, special education are an essential and required part of service for emotionally disturbed children and youth. By law, such education is to be provided by the Department of Education or its agent. The education program may be provided at the same site as the partial hospitalization program, but is considered a separate, though complimentary, program and shall not be included as part of the partial hospitalization program for reimbursement purposes.

Plaintiffs assert that "the School District's arbitrary decision to use Sarah Reed as the exclusive source of partial hospitalization services for students living within its boundaries and its refusal to pay for the education of students in CCDS's Partial Hospitalization Program is clearly in

---

[8] This provision makes the District's contractual arrangement with Sarah Reed materially distinguishable from the type of arrangement that CCDS apparently believes it is entitled to have with the District. Because of the manner in which CCDS has bundled its academic and medical services for students in the Partial Hospitalization Program, CCDS insists that every student receiving partial hospitalization services must also be educated on site at CDSS.

violation of state regulations, as well as the federal right of a parent to choose the partial hospitalization provider."  (Pls.' Br. in Opp. at 15.)

This argument is flawed in several respects.  First, Plaintiffs have not pled a violation of the regulation in question.  Although 55 Pa. Code §5210.37 mandates that the PDE (or its agent) provide an education for students receiving partial hospitalization services, the regulation expressly states that "education program *may* be provided at the same site as the partial hospitalization program," not that it *must* be provided at that site.  Yet CCDS essentially demands that every one of its students who attend its Partial Hospitalization Program be educated on site at CCDS because it has chosen to intertwine its partial hospitalization services with its educational program.  Notably, Plaintiffs do not aver that the School District has refused to provide an education for the Students; they allege only that the School District has refused to reimburse tuition costs incurred for the Students' education *at* CCDS.  Because the regulation clearly indicates that a local education agency such as the School District may offer educational programs at a site different from the one where partial hospitalization services are being obtained, Plaintiffs' averments fail to establish any violation on the part of the School District with respect to the cited regulation.

In addition, notwithstanding Plaintiffs' averment that the School District is using Sarah Reed as its exclusive provider of partial hospitalization services, this allegation cannot be accepted as true for purposes of a Rule 12(b)(6) analysis.  As has previously been discussed, the source document upon which Plaintiffs rely and which they append to the complaint does not support the legal conclusion that the School District has entered into a "single-source contract" with Sarah Reed.  Furthermore, as a legal matter, the School District has no prerogative or power to designate Sarah Reed as "the exclusive source of partial hospitalization services for students

living within its boundaries." (Pls.' Br. in Opp. at 15.) As §5210.37 makes clear, the educational and medical services which children in partial hospitalization programs receive are considered separate services, and the partial hospitalization component is not funded through the PDE but through Medicaid. The same point is made in a PDE bulletin appended to the complaint. (*See* Compl. Ex. B [ECF. No. 1] at 27-28 (noting that DPW administers the Medical Assistance program that is the primary funding source for partial hospitalization and, "[a]s the largest payor, Medical Assistance is the single best source of data about students attending partial hospitalization programs"; PDE does not have data concerning children in free-standing PHPs "[b]ecause *PHP is not an educational designation*") (emphasis supplied). Thus, even if we accept as true Plaintiff's averment that the "Erie School District claims it has the right to require any Erie students requiring hospitalization services to receive these services exclusively from [Sarah Reed]," the averment is devoid of any legal significance.

Finally, Plaintiffs theorize that education is a "remedial service" under the Medicaid Act and, as such, is a right enforceable under §1983. The relevant statutory provision, 42 U.S.C. §1396d(a)(13), authorizes states participating in the Medicaid program to provide, and receive funding for, certain enumerated services – among them "other diagnostic, screening, preventive, and rehabilitative services," including:

> any medical *or remedial services (provided in a facility, a home, or other setting)*
> recommended by a physician or other licensed practitioner of the healing arts
> within the scope of their practice under State law, for the maximum reduction of
> physical or mental disability and restoration of an individual to the best possible
> functional level.

42 U.S.C. §1396d(a)(13) (emphasis supplied). Because Pennsylvania has agreed to provide partial hospitalization services as part of its Medicaid program, and because Pennsylvania considers "[b]asic education, and in particular special education, [to be] an essential and required

part of service for emotionally disturbed children and youth," 55 Pa. Code §5210.37, Plaintiffs conclude that education is a "remedial service" within the meaning of 42 U.S.C. §1396d(a)(13), and "the right to choose the education provider is part of the federal right to choose the partial hospitalization provider." (Pls.' Br. in Opp. at 19.) In support of this proposition, Plaintiffs cite *Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Services,* 293 F.3d 472 (8th Cir. 2002). In that case, the Eighth Circuit Court of Appeals held that an early intervention day treatment program qualified as "remedial services" covered by Medicaid, *id.* at 489; therefore, Medicaid-eligible individuals were deemed to have a federal right to early intervention day treatment when such treatment was recommended by a physician. *Id.* at 480. Plaintiffs liken the educational component of CCDS's academic program to the early intervention day treatment program at issue in *Pediatric Specialty Care,* and they conclude that §§1396a(a)(23) and 1396d(a)(13) confer upon them an enforceable federal right to receive a free education at CCDS.

This line of argument is unavailing. First, as the School District correctly points out, and as *Pediatric Specialty Care* makes clear, "remedial services" under §1396d(a)(13) are funded through Medicaid, not through the federal or state departments of education. Consequently, if the educational component of CCDS's partial hospitalization program is a "remedial service" within the meaning of the statute, then Plaintiffs have sued the wrong party, and they should instead pursue their claim against the Department of Welfare for reimbursement through the Commonwealth's Medicaid plan. *See Pediatric Specialty Care,* 293 F.3d at 481 (holding that, where a physician in the state's health management services program prescribes early intervention day treatment as a service that would lead to the maximum reduction of medical and physical disabilities and restoration of the child to his or her best possible functional level, the state Medicaid plan must reimburse the treatment).

Second, the regulation in question has no application in this case.  Notably, §1396d(a)(13) allows reimbursement for remedial services that are "*recommended by a physician or other licensed practitioner of the healing arts.*"  In *Pediatric Specialty Care,* the early intervention day treatment program was found to be a "remedial service" (and therefore subject to Medicaid reimbursement) to the extent that such treatment was recommended for a particular Medicaid-eligible individual by a physician, as per §1396d(a)(13).  *See* 293 F.3d at 480 (affirming the district court's decision "to the extent that it holds that a Medicaid-eligible individual has a federal right to early intervention day treatment *when a physician recommends such treatment*.") (emphasis supplied).  Here, there is no allegation that "a physician or other licensed practitioner of the healing arts" has recommended the placement of the subject students into CCDS' academic program, as opposed to recommending placement into CCDS' Partial Hospitalization Program (for which CCDS has already received Medicaid reimbursement).

At bottom, the Plaintiffs are conflating their right under state law to a free public education with their right under federal law to choose their preferred provider of partial hospitalization services.  Plaintiffs allege that the School District is forcing the Plaintiff parents to waive their federal right under §1396a(a)(23)(A) in order to realize their educational rights under state law (Compl. ¶¶ 46, 53), but the complaint makes clear that the Plaintiff parents have done just the opposite:  they have exercised their right to choose CCDS as the provider of partial hospitalization services for their children in lieu of receiving a free appropriate public education pursuant to state law.

In sum, Plaintiffs' allegations are insufficient to establish an entitlement under federal law to have the School District pay for the subject students' tuition at CCDS.  Plaintiffs' allegations are also insufficient to establish any violation of §1396a(a)(23)(A).  Accordingly, the

complaint fails to state a viable §1983 claim to the extent that the §1983 claim is premised upon the School District's alleged violation of Medicaid's freedom-of-choice provision.

(ii)

Plaintiffs also assert in Count I that the School District has violated rights conferred upon them by the IDEA. Specifically, the complaint alleges that the School District violated the rights of seriously emotionally disturbed students "by refusing to process and approve applications for special education of [such] Students at CCDS" (Compl. ¶ 56), with the result that these students "do not receive the special education to which they are entitled under IDEA." (Compl. ¶57.)

To the extent Plaintiffs are attempting to premise their §1983 claim on the violation of rights created by IDEA, their claim fails as a matter of law. "The IDEA includes a judicial remedy for violations of any right 'relating to the identification, evaluation, or educational placement of [a] child, or the provision of free appropriate public education to such child." *A.W. v. Jersey City Public Schools,* 486 F.3d 791, 803 (3d Cir. 2007) (en banc) (quoting 20 U.S.C. §1415) (alteration in the original).[9] The Third Circuit Court of Appeals has held that, "[g]iven this comprehensive scheme, Congress did not intend §1983 to be available to remedy violations of the IDEA." *Id. See also Chambers v. School Dist. of Phila. Bd. of Ed.,* 587 F.3d 176, 184 n. 11 (3d Cir. 2009) (noting that *A.W.* overruled the court's prior ruling in *W.B. v. Matula*, 67 F.3d

---

[9] Notably, Plaintiffs have not asserted a claim under the IDEA in this civil action, nor (as the School District points out), could they successfully do so absent an exhaustion of their administrative remedies in the first instance. *See, e.g., J.L. v. Mercer Island Sch. Dist.,* 575 F.3d 1025, 1038 (9th Cir. 2009) (district court could not consider an issue that the plaintiffs never submitted in their IDEA administrative complaint or due process hearing because that issue was "unexhausted"); *Blackmon v. Springfield R–XII Sch. Dist.,* 198 F.3d 648, 655–56 (8th Cir.1999) (concluding that the parents' failure to raise an issue before the hearing officer was "significant, because under well-established judicial interpretations of the IDEA [their daughter] had an obligation to exhaust her administrative remedies with regard to the issues upon which she seeks judicial review" (citations omitted)). *See also M.K. v. Sergi,* 54 F. Supp. 2d 201 (D. Conn. 2008) ("It is well-settled that before a party may bring an action in state or federal court for a violation of the IDEA, that party must first exhaust administrative remedies under the IDEA.").

27

484 (3d Cir.1995), that money damages are available in a §1983 action based on an IDEA violation).

Accordingly, it is respectfully recommended that the District Court dismiss Count I of the complaint inasmuch as Plaintiffs have failed to allege the violation of any federal "right, immunity or privilege" and have thereby failed to assert a viable claim under §1983.

(iii)

Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007). This rule applies whether the plaintiff is proceeding pro se or with the benefit of legal counsel. *See id. See also District Council 47 v. Bradley,* 795 F.2d 310, 316 (3d Cir. 1986) (citations omitted).

In this case, the deficiencies in Count I cannot be cured by way of further amendment because Plaintiffs are seeking damages for the violation of federal rights which are either nonexistent or unenforceable under §1983. As further amendment of the §1983 claim would be futile, it is respectfully recommended that the District Court dismiss Count I of the Complaint with prejudice.

c. *Count II of the Complaint*

In Count II of the complaint, Plaintiffs assert that the School District has violated Pennsylvania's corollary "freedom-of-choice" statute, 62 Pa. Stat. §1405. Because Plaintiffs' complaint fails to state a viable federal cause of action, it is respectfully recommended that the District Court decline to exercise supplemental jurisdiction over Count II of the complaint. *See*

28 U.S.C. §1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over state law claims where "the district court has dismissed all claims over which it has original jurisdiction"). *See also Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir.2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (quotations omitted).

In this case, there is no compelling reason for the District Court to exercise supplemental jurisdiction over Plaintiffs' state law claim, as the litigation is still in its early stages and resolution of Count II depends on issues of Pennsylvania law which are better left to the state courts. Accordingly, it is respectfully recommended that Count II be dismissed without prejudice to be litigated in state court.

### III. Conclusion

For all of the foregoing reasons, it is recommended that the Motion to Dismiss filed by Defendant the School District of the City of Erie be granted. Because the Plaintiffs' §1983 claim is deficient on both jurisdictional and substantive grounds, and because further amendment of that claim would be futile, it is recommended that Count I of the complaint be dismissed with prejudice. It is further recommended that the District Court decline to exercise supplemental jurisdiction over the state law claim at Count II of the Complaint and that said claim be dismissed without prejudice to be pursued in the Court of Common Pleas.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until June 6, 2014 in which to file objections. Failure to timely file objections will constitute a waiver of any appellate rights.

*Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir.2011). Any party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.


/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: May 20, 2014

cc: all ECF registered counsel